J-A17033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.F.G., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.T. | : | No. 1844 WDA 2017 |

Appeal from the Order November 13, 2017
in the Court of Common Pleas of Erie County,
Civil Division at No(s):  No. 10775-2017

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 31, 2018**

M.F.G. ("Father"), *pro se*, appeals from the Order (the "Custody Order") granting A.T. ("Mother") primary physical custody and shared legal custody of their minor daughter, M.G. ("Child") (born in November of 2006), and granting Father partial physical custody and shared legal custody.  We vacate and remand.

On March 15, 2017, Father filed a Complaint for custody against Mother,[1] seeking shared legal and physical custody of Child with Mother.  The parties and their counsel participated in a custody conciliation, but did not reach an agreement.  The matter was promptly listed for trial.  Subsequently, the parties and the trial court signed an interim custody consent Order, which was effective pending a custody trial or a final consent order.

---

[1] Father and Mother are not married.

On September 12, 2017, the trial court held a pre-trial conference, which both parties and their counsel attended. John R. Evanoff, Esquire ("Attorney Evanoff"), represented Father, and Paige E. Peasley, Esquire ("Attorney Peasley"), represented Mother.

Because a key issue in this case is whether the parties reached an agreement at the pre-trial conference, we set forth the relevant portion thereof herein:

THE COURT: Where are we at here?

[ATTORNEY] EVANOFF: We just received Dr. Schierberl's[2] report.

\*\*\*

[ATTORNEY] EVANOFF: And it was very favorable in terms of [Child]. And it's also very favorable in terms of increasing the custody time with [Father]. [Dr. Schierberl] indicates that he sees there to be no problem in terms of working back toward the 50-50.

\*\*\*

So we would like to see the schedule increase and the parties counsel with Ms. Sulkowski[3] as they have been.

THE COURT: Attorney Peasley?

[ATTORNEY] PEASLEY: Yes. Good morning, Your Honor. I did present pretty much the same proposal to Attorney Evanoff this morning, which provides [for Father] having every Friday and

_____

[2] Doctor James Schierberl is a psychologist who the parties retained to provide an assessment of Child and custody recommendation.

[3] Melissa Sulkowski ("Sulkowski") is a counselor who the parties originally retained to provide counseling to Child, pursuant to the June 8, 2017 interim consent Order.

Saturday night and after school on Wednesdays. Parties go to [] Sulkowski. Follow the recommendations of the counselor, including if she recommends increased time.

This report doesn't say 50-50 immediately. It says gradually increasing. So what we're saying –

THE COURT: That's what I heard Attorney Evanoff say, too.

[ATTORNEY] PEASLEY: Yeah.

THE COURT: A transition back to what it was.

[ATTORNEY] PEASLEY: So this, this shared custody order that we proposed gives him two nights a week, gradually increasing as per [] Sulkowski's recommendations. And my client will agree to that.
…

So I -- I really don't understand why Attorney Evanoff is objecting to my proposal, because we're basically proposing what he said; [Sulkowski], follow the recommendations to increase the time as per [Sulkowski's] recommendations.

THE COURT: Well, how about, you know, we start the gradual transition and with consideration of [Sulkowski's] recommendation? It may come to a point where -- and I don't know if you folks have worked with her before.

\*\*\*

[ATTORNEY] EVANOFF: They haven't, no.

THE COURT: No.

[ATTORNEY] PEASLEY: They have their first appointment next week.

THE COURT: She's wonderful. She really, really is. I mean I knew her in private practice. She's very caring. She'll tell you like it is. She's not going to soft sell it.

So I think Attorney Peasley's recommendation of the gradual transition back to what the schedule was makes sense, complemented with assistance with [] Sulkowski.

- 3 -

I mean if we get to a point where it seems like -- if you feel, [Attorney] Evanoff, things are being stonewalled, you always have the opportunity to come back. I'll keep this case [- -]

[ATTORNEY] EVANOFF: What we're asking, though - -

THE COURT: - - for monitoring - -

[ATTORNEY] EVANOFF: -- Your Honor, is it has been two overnights per week and that's the part that was left out in Attorney Peasley's presentation to you is we're stuck there. And then Dr. Schierberl says there's parental acrimony and that's what seems to be –

THE COURT: And that's where [Sulkowski is] going to –

[ATTORNEY] EVANOFF: Right, but what our --

THE COURT: offer these folks, some help.

[ATTORNEY] EVANOFF: -- proposal was was add just one more overnight. He has a Tuesday dinner visit right now and what our position or our request was that the Tuesday overnight, that we try Tuesday -- well, instead of a Tuesday dinner visit that we do a Tuesday overnight. And then he liked having it Thursday to Saturday because as part of that he drives [Child] to swim practice, to basketball, and so we weren't saying --

THE COURT: Right, I mean that's the thought of getting back there. Getting back.

[ATTORNEY] EVANOFF: But we're already at the two overnights.

THE COURT: I understand that, but in terms of transition, wouldn't it make sense rather than pushing for this Tuesday overnight right now, have a couple meetings with [Sulkowski] and work in to maybe accomplishing that? Or I think you'd want to stay away from a let's do this for a month, then let's try this for a month, and then you get into whatever the routine is going to be, which could be something completely different.

So I think that transition back to a shared custody arrangement certainly makes sense, it's just a matter of being

patient. And you have been, sir. And your daughter is going to benefit by that.

I guess what I'm suggesting to you is, is just hang in a little bit longer. Give [Sulkowski] a chance. She's not -- I think you both are going to like her a lot. I really do. I haven't found very many people in Erie County that have had bad things to say about her. She's good at what she does.

And she'll identify if there is a -- if she thinks [Mother is] the problem, she's going to call you out on it. She will not hesitate to do that.

And if she thinks you're being [a] jerk, she's going to get in your face and tell you you're being a jerk.

But what I have to look at is your daughter right now. And I understand what you're saying, what Dr. Schierberl has to say. And I also heard you say in your presentation, [Attorney] Evanoff, that Dr. Schierberl seem[s] to indicate that the transition -- being the operative word -- back to, you know, what they had would be in her best interest.

[ATTORNEY] EVANOFF: Absolutely. And I understand what Your Honor is saying and maybe what we could do, if you're inclined, would be to maybe just put us on a November trial list so we keep moving it along. Because if there is any stonewalling, then we can even maybe do a status conference with Your Honor in November –

THE COURT: Yeah.

[ATTORNEY] EVANOFF: -- and then just follow; you had indicated that you're comfortable with Attorney Peasley's position, but we would like to keep it Thursday to Saturday if we could at all and have the Tuesday.

THE COURT: Well, let's, you know, work with [Sulkowski]. Let's give her a chance.

[ATTORNEY] EVANOFF: Mm-hmm.

THE COURT: And, you know, if that's what the schedule ends up being and we transition back to that, that's what we do.

Rather than putting this on a trial term or anything like that, I'm going to leave it open right now and I'll be able to maybe off term find if it's an hour or two hours, or whatever we might need, if this thing has to go to trial. I think it's better to be more flexible that way.

[ATTORNEY] EVANOFF: Okay, thank you. No, that sounds good.

THE COURT: You know, and I offer that too, to counseling and to the parties, you know, where it's not – there's not this big thing hanging over your head or if it doesn't get taken care of we're in November. Well, [Child] deserves a good chance to work with [Sulkowski] and you two work with [Sulkowski] identifying issues and getting over these hurdles.

She's going to be your daughter the rest of your life. How we proceed now -- I don't want to push this too hard too fast.

You want to say something?

[FATHER]: I -- just that everything has been working fine with the schedule we had. There was -- there was a –

THE COURT: I know this is -- this hasn't been a good situation for you, I understand that. But I'm also hearing that, you know, there's issues that [Child] just had, you know, with the transfer the other day. So something's going on.

***

THE COURT: You agree with me there, don't you, [Father]?

[FATHER]: And it's spawned by [M]other. I pick [Child] up, there was no issue whatsoever. There was a desperate attempt to eliminate me from the school, [inaudible] taking her to school.

THE COURT: I understand. You're going to have your opportunity to voice your position with [Sulkowski]. And again, if that's -- if she senses that that's what's going on, she'll be right in your face. So trust in that one.

[FATHER]: I believe you.

MR. EVANOFF: So if we could keep the prior schedule, Judge, which was the Thursday to Saturday and then Tuesday dinner and still the same number of nights, and then just provide that they're going to see [] Sulkowski for the counseling and follow her recommendations.

THE COURT: Attorney Peasley.

[ATTORNEY] PEASLEY: The problem with the Thursday night, school just started; and it's [Child], not my client, that has said, "I don't to spend the night there on a school night." I don't know why and that's why –

THE COURT: Yeah.

[ATTORNEY] PEASLEY: [Sulkowski] might be able to get to the bottom of it.

THE COURT: Yeah, let's maybe hold off on that for 30 days and -- or shorter. If [Sulkowski] says, "Hey, you know what? Let's do it[.]"

[ATTORNEY] EVANOFF: Mm-hmm.

THE COURT: But if there are issues, you know, let's identify them. And again, [Sulkowski] may say, "well, you know, let's try it for a week." And once she gets her arms wrapped around you and the dynamics and [Child], she's going to be in a better position to say, "[k]ick Thursdays in, let's do it."

[ATTORNEY] EVANOFF: I understand what you're saying, Your Honor.

                                    ***

[ATTORNEY] PEASLEY: Do you want the after school to be Tuesday night or Wednesday night?

[ATTORNEY] EVANOFF: I would need to talk to him about all the specifics.

[ATTORNEY] PEASLEY: Oh.

[ATTORNEY] EVANOFF: If we can take that with us and then I can –

[ATTORNEY] PEASLEY: As long as I get a copy.

[ATTORNEY] EVANOFF: -- let Attorney Peasley know, in terms I'd like to sit down with him and go through paragraph by paragraph, if that would be acceptable.

[ATTORNEY] PEASLEY: As long as we know that the trial is off so I don't have to do a pretrial.

\*\*\*

THE COURT: Yeah, it's off.

MS. PEASLEY: It's off, okay.

[ATTORNEY] EVANOFF: Yes, yeah.  And Your Honor has been clear and helpful and I understand where you're coming from and that's the basic framework of the order; but as far as any little items that may or may not be in there, I'd just like the opportunity to sit down and review that with - -

THE COURT: All right, well, let's not linger on it forever.

[ATTORNEY] EVANOFF: No sir.

THE COURT: And if you have issues where they're unresolved, then I guess submit your order, submit your order, and I'll figure out which one I'm going with.

[ATTORNEY] PEASLEY: You'll break the tie.

THE COURT: I will do that.

[ATTORNEY] EVANOFF: Thank you, Your Honor.

N.T., 9/12/17, at 2-14 (footnotes added).

Following the conference, the trial court entered an Order that provided,

as follows:

[B]ased on the agreement of the parties reached at the second pretrial conference held September 12, 2017 on [Father's] Complaint for Custody filed March 15, 2017, the case is SETTLED. The custody trial previously scheduled for trial this date is CANCELLED.

Trial Court Order, 9/25/17, at 1 (emphasis in original).

Thereafter, the parties submitted proposed custody orders, and the trial court issued the Custody Order on November 8, 2017,[4] which provided, in relevant part, as follows: (1) Mother shall have primary physical custody, and Father shall have partial physical custody every Friday directly from school, or 4:30 p.m. from Mother's home, to Sunday at 1:00 p.m., and every Tuesday directly from school, or 4:30 p.m. from Mother's home, to 7:30 p.m.; and (2) Father's partial custody time with Child would be expanded as per the recommendations of Sulkowski. Father, *pro se*, filed a timely Notice of Appeal, along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following claims:

1. The trial court erred and/or abused its discretion when it entered a child custody [O]rder without any evidentiary support to make such an order.

2. The [t]rial court erred and/or abused its discretion when it failed to apply or consider any of the factors set forth at 23 Pa.C.S.[A.] §[ ]5328(a).

3. The trial court erred and/or abused its discretion when it failed to make findings of fact or conclusions of law in a comprehensive

---

[4] The Custody Order was filed with the Erie County Prothonotary's Office on November 13, 2017.

opinion in support of its child custody [O]rder after analyzing the 23 Pa.C.S.[A.] §[ ]5328(a) factors.

4. The trial court erred and/or abused its discretion when it cancelled the custody trial and did not allow [F]ather the benefit of presenting his case, but rather deferred the child custody determination to the co-parent counselor.

Brief for Appellant at 11.

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We will address Father's issues together, as they are closely related, and all essentially challenge the trial court's omission of a custody trial and opinion. First, Father argues that the trial court entered the Custody Order without any evidentiary support and without a consent order. Brief for Appellant at 19-23, 30-31. Next, Father alleges that the trial court did not consider the 23 Pa.C.S.A. § 5328(a) custody best interest factors. *Id.* at 24-26. In his third claim, Father argues that the trial court failed to make any findings of fact and conclusions of law. *Id.* at 27-28. Finally, Father claims that the trial court improperly directed that the custody trial be cancelled and delegated the decision-making authority to the co-parent counselor. *Id.* at 29-34.

With any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S.A. § 5338. Section 5328(a) states that "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all the relevant factors," including the sixteen explicitly set forth therein. ***See id.*** § 5328(a); ***see also J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (stating that trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) … when entering a custody order." (emphasis in original)).

Further, we have explained as follows:

Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with [s]ection 5323(d).

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014) (citations and quotation marks omitted); ***see also S.W.D. v. S.A.R.***, 96 A.3d 396, 401 (Pa. Super. 2014) (stating that "[a] trial court's failure to place its reasoning regarding the [section] 5328(a) factors on the record or in a written opinion is an error of law.").

However, it is unnecessary for a court to consider the section 5328(a) factors where the record reveals that the parties entered a custody order

based upon an agreement between the parties. *See* Pa.R.C.P. 1915.7 (stating that "[i]f an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel.").

Here, the transcript of the pre-trial conference held on September 12, 2017, reflects that the parties did not reach an agreed-upon order at the conference. The parties agreed to the cancellation of the scheduled custody trial, in the hope that the parties could reach a settlement on Father's partial custody schedule. Instead of giving the parties time to work out a consent order, the trial court directed both parties to submit proposed custody orders and the trial court would "break the tie." *See* N.T., 9/12/17, at 14. The record does not reflect any written agreement between the parties as to a custody order. Accordingly, the trial court did not enter the Custody Order pursuant to Rule 1915.7 prior to canceling the custody trial.

Because the parties did not reach an explicit agreement, the trial court was not permitted to enter an order regarding custody absent an analysis of the section 5328(a) factors on the record. The Custody Order did not include an analysis of the section 5328(a) custody best interest factors. *See J.R.M.*, *supra*; *S.W.D.*, *supra*. Nor did the court delineate the reasons for its decision on the record in open court. *Id.* Accordingly, we are constrained to conclude

that the trial court abused its discretion in failing to set forth an analysis of the 5328(a) factors on the record.

We vacate and remand the Custody Order, with directions for the trial court to reinstate the custody Complaint filed by Father, and to schedule a custody trial in compliance with the Pennsylvania Rules of Civil Procedure, or to enter a custody order that has been agreed upon by both parties as required under Pa.R.C.P. 1915.7.

Order vacated; case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2018